Tilghman O. J.
In this case two points are to be decided. 1. Whether a writ of error lies. 2. Whether the judgment is good so far as it respects the costs.
1. The reason assigned against a writ of error is, that the act of assembly gives no remedy, but by appeal to the Court of Common Pleas. The case does not stand exactly on the footing of an award filed in the office of the prothonotary with no farther proceedings on it, because the matter was taken up on motion in the Court of Common Pleas, and that court have expressly given a judgment for the amount of the debt and costs awarded by the arbitrators. But even if it rested on the filing of the award, it is considered, as a judgment on which a writ of error lies, as was lately decided by the court at Lancaster in the case of Ebersoll v. Krug, 8 Binn. 528.
2. On a consideration of the several acts of assembly on the subject of costs on appeals from the judgment of a justice, or the award of arbitrators, it appears, that in ease of an appeal by the defendant, he shall not be subject to costs where less is recovered against him on the appeal, than the amount of the judgment or award appealed from, unless he produced new evidence on the appeal. No new evidence was produced in this case; by what authority then did the arbitrators award costs to the plaintiff? I think it will *10 hardly be contended that arbitrators are not bound by acts of assembly, especially when it is considered that they may be appointed, on the application of either party, without the consent of the other. They have power, it is true, to determine both the law and the fact in the first instance, because not being assisted by a jury, nor by judges, they must either determine both law and fact, or not decide at all. But it by no means follows that they are placed above the law. Such a construction would be monstrous; it would lessen the *security of property, and almost dissolve the bonds of society. Where it manifestly appears, on the face contrary to law, it cannot But it is said, that granting that the arbitrators have no power to control the law, yet they have power to give such damages as they think reasonable, and they might in this instance, have given the amount of the costs by way of damages. It is true they might, but such does not appear to have been their intention; they ascertained the amount of the debt, separate from the costs. Now, after fixing the amount of the debt, according to the evidence, how could they with a good conscience have increased that amount, not because it was really due, but solely with a view of throwing the costs on the defendant contrary to law. I do not believe that the arbitrators had any design to contravene the law, or knew that the defendant was not liable to costs; on the contrary, I must suppose that they would not have given costs had they been told that the law forbad them. There never would have been a doubt on the subject, had it not been decided in the construction of an act of parliament, which enacts that in case of slander, if the plaintiff recovers less damages than 40s., he shall have no more costs than damages, that the jury may give full costs though they give less damages than 40s. The law has been so construed, and therefore in that case, it must not be departed from. The reason assigned is that the jury meant to give the whole as damages. There may be some ground for this reason in cases of slander, or of torts in which there is no fixed standard of damages; but that reason would not apply to an action for the recovery of a debt, because there the debt with interest on it is a fixed standard. I am free moreover to confess that I was never thoroughly satisfied with the construction given to the statute in case of slander, and therefore though bound by it in that case, I think myself at liberty in other instances, to adopt a mode of construction more agreeable in my opinion to the intent of the legislature. What is more difficult to be got over is the case of *11 M’Laughlin v. Scott, 1 Binney 61. From the known accuracy of the reporter, I make no doubt but that what fell from the court is faithfully set down. It appears however that the case was decided without argument, on the thought of the moment. Under such circumstances, it would be going too far, to say, that the subject is *not open to more mature consideration. We have on the record in the case before us, the opinion of the president of the Court of Common Pleas, who declares, that nothing but the authority of M’Laughlin v. Scott induced him, contrary to his own opinion, to give judgment for costs. I am so well satisfied, that the power of awarding costs is in .opposition to the law, that I must give my opinion for reversing the judgment of the Court of Common Pleas.'
Yeates J.
The question in this case is, whether under the last supplement to the arbitration law passed on the 29th March 1809, the arbitrators have a discretionary power to award costs, in matters of contract?
The action originated before a justice of the peace of Centre county, and was referred. The arbitrators awarded forty-eight dollars and thirty-six cents to the plaintiff below with costs, upon which judgment was rendered by the justice. An appeal was regularly entered by the defendant below, and the suit was referred to arbitrators under the act above mentioned, who awarded to the plaintiff twenty dollars and costs. No appeal was entered hereon, but the defendant obtained a rule of the Court of Common Pleas on the plaintiff to show cause why the defendant should not be discharged, upon payment of the debt awarded and interest thereon .without costs. The court upon argument discharged this rule with considerable reluctance in January term 1810, and directed judgment to be entered for the twenty dollars and costs, as found by the last arbitrators: Whereupon error is brought in this Court.
Tke counsel for the defendant in error have insisted, that under the law in question, the only mode of redress which the party aggrieved by an award has,is by appeal; that the arbitrators have an incontrovertible power over the law and fact of each case submitted to them, absolutely conclusive unless where an appeal has been brought; and that in fact, the very matter in the controversy has been determined in this Court in M’Laughlin v. Scott 1 Binn. 61.
As to appeal being the only remedy, and as to the controlling superintending power of this Court, in cases of real and substantial errors apparent on the record, I have delivered *12 my sentiments at the last term of the Lancaster district in *Ebersoll v. Krug et Ux. which I will not now repeat. An additional argument presents itself under the circumstances of this case. The defendant below has had the benefit of one appeal from the decision of arbitrators; can he claim a second appeal? If he can, I know not where he is to stop, and the suit would be converted into a mathematical circle, without end, under such privilege.
I do not mean to impeach the accuracy of the report of McLaughlin v. Scott. But the argument therein must have been very slight, and the decision made on little consideration. Not a single member of the court has the smallest note of it, which I have scarcely known ever to have happened before, where a point of law has been seriously debated. It was said in a late case of Stuart v. Harkins, in the Eastern district at the late December term, to require reconsideration.
It is not stated in the report, whether the action was removed from the Common Pleas into this Court, or whether it originated here. Prom the objection made by the defendant’s counsel, it would seem that the original process issued from this Court. I have not the immediate power of recurring to the record; but it appears to me clearly, that in either mode, the determination cannot be reconciled to the words of the laws. By the act of 20th May 1767, sec. 8,1 Dali. St. Laws 480, it is provided, that if a plaintiff shall remove his cause from “ the Court of Common Pleas into the Supreme Court, the debt or damages whereof, which shall be found due by default, confession, verdict, or report of referees, shall not amount to 501. he shall not recover any costs of suit.” And by the act of 25th September 1786, giving the Supreme Court original jurisdiction in the city and county of Philadelphia, it is likewise provided by sect. 5, 2 Dali. St. Laws 472, that “if any plaintiff shall bring any suit or action in the Supreme Court, unless where the title of land or other real estate may come in question, and shall not recover thereupon more than 50i. such plaintiff shall not be allowed any costs of suit.”
It is a settled rule, that statutes giving costs, being considered as penal in their nature, are always construed strictly. 2 Stra. 1105; 3 Burr. 1287. But that case was within the letter of both laws. It does not to be a wherein *the defendant made a set-off, for there it is wholly in the defendant’s power and knowledge, whether he will insist upon and prove his set-off at the trial; consequently the reducing of the plaintiff’s demand at the option of the defendant ought not to impair the plaintiff’s right to *13 costs. 1 Barnes 161, Scott v. Ferrall; 2 Stra. 1191; 1 Wils. 19; 2 Wils. 68. The court have no discretionary right over costs; by law the costs must follow the verdict. 1 Wils. 324.
Under the “act for defalcation,” passed in 1705, sect. 3. 1 Dali. St. Laws 66, the award of referees mutually chosen, and made according to the submission of the parties, approved of by the court and entered on the record, shall have the same effect, and be deemed, and taken to be as available in law, as a verdict given by twelve men. The power of the court in M’Laughlin v. Scott, to withhold their confirmation of the report will not be denied; nor can it be said, that the referees were not bound by the known laws of the commonwealth. Their power cannot justly be assimilated to those of arbitrators on a bond of submission, whose award cannot be impeached at law, on grounds of the grossest partiality. Nor can it be insisted, that it was the intention of the act of 29th March 1809, to vest arbitrators with powers of deciding according to their caprice, or mere will and pleasure, and absolve them from all obligations to fixed and settled rules. Why else was an appeal granted, wherein those rules must necessarily be the guides of the tribunals, which should ultimately settle the controversy? ' Under the 10th sect, of the act, “the arbitrators were to be sworn or affirmed justly and equitably to try the matters in variance, to examine proper, disinterested, and competent witnesses, to judge of the credibility of their testimony, and to decide on the law, and the facts, that may be involved in the cause to them submitted.” They sit without legal aid, and the powers granted were indispensably necessary to carry into execution the plan of reform of judicial proceedings adopted by the legislature. So far from showing any design to vary the known and established rights of individuals, or to impair the energy of the laws, these powers evince in a forcible manner, the strongest intention to the contrary. To a certain extent, the court have a controlling power over the cause in which the award is made; and a variety of cases may be *put to show the absolute necessity of such right, and the salutary influence arising from the discreet exercise of it.
It is true, that in Browne v. Gibbons, 1 Salk. 207, it was said to be the resolution of all the justices of the King’s Bench and Common Pleas, that in an action upon the case for slander, though the court are bound by the Stat. 21 Jac. 1 c. 16, and cannot increase the costs where the damages are under 405. yet the jury are not bound by that statute, and therefore they may give 10?. costs where they give but 10c?. *14 damages. The English statute runs in the same words as our act of 27th March 1713, sect. 4, 1 Dali. St. Laws 97; that if in actions of slander the damages are found or assessed under 40s. the plaintiff shall have and recover only so much costs as the damages so given or assessed do amount to, without any further increase of the same. It is not perfectly accurate to say, that the jury are not bound by that statute ; because all men are equally bound to obey the laws of their country. The correct ground of that decision is, that the true finding of the jury shall be carried into effect; and when it appeared to be their real intention to find damages above 40s. as was evidently the case, when they find 101. costs in addition to the 10d. damage, (or which must necessarily be presumed, when they give the costs of suit in a trial in a court of record) the court may mould their verdict into legal form, so as to effectuate their intent, and give the plaintiff his costs. It is well known that damages and costs are frequently used in our books as synonymous expressions.
The courts of this state have adopted the same rule of decision in actions of slander, and where the jury have found, in such a suit, damages under 40s. with full costs, judgment is always rendered accordingly. At Nisi Prius and in the Circuit Courts, it has been common in such suits, where damages under 40s. have been found with six cents costs, to inquire of the jury, whether they meant to find full costs or not, and to enter the verdict according to their answer. But where the entry is made with six cents costs, the plaintiff' gets no more costs than damages. Frederitze v. Odenwalder, was an action of slander, removed by the plaintiff into this Court from the Common Pleas of Northampton county; a verdict passed for the plaintiff for twenty-five cents damages with six cents costs, and the Court in banc in March term 1799, were *of opinion, that he was not entitled to costs. And in Stuart v. Harkins, before cited, where referees in slander found one dollar damages with costs, we were of opinion, upon full argument, that the plaintiff should recover no more costs than damages, and affirmed the judgment of Mr. President Rush given to the same effect.
I well recollect the cause of M’Kissom v. Steel et al., wherein I was of counsel with the plaintiff, tried at York Nisi Prius. It was trespass and false imprisonment against a justice of the peace, constable and plaintiff below, for confining the plaintiff above in a cause not within the jurisdiction of the justice. We had removed the cause from the *15 Common Pleas, and urged to the jury upon the trial, that the plaintiff after sustaining a gross injury, might be subjected to the payment of the costs, if he did not recover 501. damages. The plaintiff' was a poor man and had been hardly dealt with. M’Kean C. J. charged the jury, that damages were their peculiar province, and should they think proper to find a sum in damages under 50i., they might protect the plaintiff by finding full costs ; which they found accordingly with 100 dollars damages. Mr. Sergeant for the defendants, afterwards in April term 1791 contended, that judgment should be entered for the plaintiff for the damages without the costs. But the court denied his motion, and compared the suit to an action of slander, and judgment was entered agreeably to the verdict.
But the striking difference between all those cases and the present one is this. In causes of action of a vindictive nature, which arise peculiarly ex delicto, there cannot in the nature of the thing be any settled measure of damages. The jurors or referees estimate the injury from their own individual feelings, and the consequences of such acts in social life; and they may deem it eligible to assess a particular sum in damages, beyond the costs, which may be deemed an adequate compensation for the wrong done. On such subjects, there may be great diversity of opinion in well informed minds. But here the cause of action arose ex contractu ; and there was a settled measure of damages, which might be calculated with the utmost accuracy and precision. It becomes no prudent man to overstep the line, which the wisdom of the community has drawn in order to repress a state *of litigation. The jury are to give costs where they are recoverable. If they do not, the court will on motion order the costs to be taxed, and endorsed on the postea. Hull. Law of Costs 623. But to permit jurors, referees or. arbitrators, to alter and change the municipal code of laws, and substitute therefor, their, own idea of the hardship of particular cases, tends to confusion and uncertainty. Let them judge of facts according to the suggestion of their judgments and consciences; when these facts are found, let the language of the law be the rule as to the costs. In Walker et al. v. Smith, in the Circuit Court of the United States for this district, the jury found for the plaintiffs 468 dollars 44 cents; but conceiving it to be a hard case, added, that the plaintiffs should pay the costs. But this was at once abandoned by the defendant’s counsel, on general principles ; and the court declared, that the plaintiffs were clearly entitled to costs, 4 Ball. 390. And in Guier v. M’Faden, 2 *16 Bin. 587, where a report was found for the plaintiffs for fifteen dollars and the costs, the court determined that the sum found would not carry costs, unless there was an agreement in the rule, that the referees should have a power over the costs, or the plaintiff had made affidavit before bringing the suit, that he believed the debt was beyond the sum. within a magistrate’s jurisdiction. The court were clearly of opinion, that the legislative restriction with respect to costs, was equally binding on courts, juries, and referees; and that neither tribunal could fly in the face of the law and say, the defendant shall pay the costs, in a precise case, where the legislature had declared in express terms, the plaintiff' shall pay them.
The supplement to the arbitration law of 9th April 1807, s. 2, 8 St. Laws 178, has enacted, that where the defendant has appealed from a judgment of a justice of the peace, and on such an appeal procures an abatement of the same judgment, he shall be allowed his daily pay of fifty cents and costs, where he does not exhibit new evidence. Here the defendant below has obtained a deduction of 28 dollar’s 36 cents from the judgment of the justice, without exhibiting new evidence; and he and not the plaintiff' is entitled to costs.
I am therefore of opinion, that the judgment rendered in the Court of Common Pleas of Centre county be reversed.